NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| KEVIN PLANKER, | : | |
| Plaintiff, | : | Civil No. 07-2679 |
| v. | : | **OPINION & ORDER** |
| MICHELLE R. RICCI, | : | |
| Defendant. | : | |

THOMPSON, U.S.D.J.

INTRODUCTION

This matter comes before the Court on Plaintiff's Motion for a Temporary Restraining Order and/or Preliminary Injunction [docket #103]. Plaintiff, who is incarcerated at New Jersey State Prison, alleges that Defendant has violated his civil rights by scheduling religious services at a time that interferes with Plaintiff's lunch and outdoor recreation periods. Plaintiff filed the instant motion seeking an injunction that will require Defendant to reschedule the religious services to avoid the conflict. The motion has been decided upon the papers, without oral argument, pursuant to Fed. R. Civ. P. 78(b). For the reasons stated below, Plaintiff's Motion is DENIED.

BACKGROUND

A. Factual Background

Plaintiff, an inmate at New Jersey State Prison ("NJSP"), identifies as an "organic Odian." (Reply Br., Planker Decl. ¶ 12.) Defendant Michele Ricci is a former NJSP Administrator. Odinist religious services at NJSP are scheduled on Tuesdays, beginning

between 11:30 a.m. and 12:00 p.m. and lasting until 1:45 p.m. (Mot. for Summ. J. 3.) The services coincide with Plaintiff's lunch period, which runs daily from 11:45 a.m. to 12:30 p.m., and his outdoor recreation, or "yard movement," which occurs every other day from 12:45 p.m. to 1:30 p.m. (*Id*.) To attend services, Plaintiff must therefore miss one lunch each week and one outdoor recreation period every other week. Plaintiff asserts that the lack of access to food, sunlight, and recreation on these days, combined with his strict vegan diet, has several deleterious effects on his health. (*Id.* at 6-7.)

B. Procedural Background

Plaintiff states that he submitted two inmate remedy forms ("IRF's") asking NJSP to reschedule services but received no response. On April 19, 2010, Plaintiff submitted a third IRF and received a response ten days later from Imam Suluki, the Supervisor of Chaplaincy Services at NJSP. Imam Suluki denied Plaintiff's request, informing him that it was "impractical, illogical and self-indulgent to assume that a services [sic] open to all Odinist [sic] could be scheduled to accommodate your mess and recreation schedule without affecting others." (Mot. for Summ. J., App. 2.) Plaintiff states that he completed and submitted the part of the form to appeal the decision and, after receiving no response, sent an appeal to the Commissioner's Office of the New Jersey Department of Corrections as well as a copy to Defendant. Plaintiff claims that he has received no response. On August 17, 2010, Plaintiff filed the instant motion.

## LEGAL STANDARD

A. Standard for Preliminary Injunction

To secure a preliminary injunction, the moving party must show: (1) that it is likely to succeed on the merits; (2) that it will suffer irreparable harm if injunctive relief is denied; (3) that granting the injunction will not result in even greater harm to the nonmoving party; and (4) that

the public interest favors such relief. *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). Furthermore, injunctive relief is an "extraordinary remedy" warranted only in "limited circumstances." *Id*.

B. <u>The Prison Litigation Reform Act</u>

Because Plaintiff is a prisoner litigant, the Court must also consider the Prison Litigation Reform Act ("PLRA") before it can grant injunctive relief to an incarcerated individual.[1] When granting injunctive relief, the PLRA mandates that four additional criteria must be met: (1) the relief must be narrowly drawn; (2) the relief must extend no further than necessary to correct the violation of the federal right; (3) the relief must be the least intrusive means necessary to correct the violation of the federal right; and (4) substantial weight must be given to any adverse impact on public safety or the operation of the criminal justice system that might be caused by the relief. 18 U.S.C. § 3626(a)(2).

C. <u>Religious Land Use and Institutionalized Persons Act</u>

The Religious Land Use and Institutionalized Persons Act ("RLUIPA") governs the religious rights of incarcerated individuals at federally funded prisons.[2] RLUIPA bars federally funded prisons from "impos[ing] a substantial burden on the religious exercise of a person . . . unless the government demonstrates that imposition of the burden on that person . . . (A) is in furtherance of a compelling governmental interest; and (B) is the least restrictive means of furthering that compelling interest." 42 U.S.C. § 2000cc-1(a). To state a claim under RLUIPA,

---

[1] The PLRA also governs the procedures prisoners must follow in order to sue under 42 U.S.C. § 1983 regarding their prison conditions. Section 1997e(a) of the PLRA precludes prisoners from bringing these claims "until such administrative remedies as are available are exhausted." Failure to exhaust administrative remedies is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The defendant has the burden to prove that the plaintiff failed to exhaust all available administrative remedies in accordance with the PLRA. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002). Defendant questions but does not attempt to prove that Plaintiff failed to exhaust administrative remedies. As a result, we decline to decide this issue.

[2] Because RLUIPA provides heightened protections to prisoners beyond those established under the First Amendment to the Constitution, the instant motion is discussed under RLUIPA. *See Washington v. Klem*, 497 F.3d 272, 277 (3d Cir. 2007).

a prisoner must establish that his religious exercise has been "substantially burdened." Once a claimant satisfies this element, the burden shifts to the government to show that the burden on the prisoner's religious exercise furthers a "compelling governmental interest" and "is the least restrictive means of achieving that interest." *Washington v. Klem*, 497 F.3d 272, 277 (3d Cir. 2007).

ANALYSIS

A.  <u>Plaintiff's Likelihood of Success on the Merits</u>

Plaintiff alleges that the current scheduling forces him to choose between constitutional rights. Plaintiff's alleges what amounts to three separate violations: (1) that he is being denied the right to the free exercise of his religion protected by the First Amendment, (2) that his confinement amounts to cruel and unusual punishment in violation of the Eighth Amendment, and (3) that he is being discriminated against with regard to the exercise of a fundamental right in violation of the Equal Protection Clause of the Fourteenth Amendment.

(i)  <u>Free Exercise</u>

Although prisoners retain constitutional protections, their "First Amendment rights must in some respects be limited in order to accommodate the demands of prison administration and to serve valid penological objectives." *Sutton v. Rasheed*, 323 F.3d 236, 252 (3d Cir. 2003) (internal quotations omitted). Scheduling is but one aspect of the "formidable task of running a prison" to which courts will defer to prison administrators. *O'Lone v. Shabazz*, 482 U.S. 342, 353 (1987). In this case, the prison manages to provide 46 different faiths with at least one meeting each week. (Def.'s Supplemental Br., Suluki Decl. ¶ 3.) Accommodating this many faiths may require that certain attendees must face scheduling conflicts. Plaintiff has not shown that Defendant could schedule Odinist services to avoid conflicts with the lunch and yard

schedules of other Odinist attendees, let alone that Defendant could schedule *all* religious services to match the schedules of *all* attending prisoners.  As a result, Plaintiff cannot demonstrate that his religious exercise has been substantially burdened, as required by the RLUIPA.

    (ii)    <u>Cruel and Unusual Punishment</u>

Prison conditions "may amount to cruel and unusual punishment if they cause 'unquestioned and serious deprivations of basic human needs . . . [that] deprive inmates of the minimal civilized measure of life's necessities.'"  *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 417-18 (3d Cir. 2000) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  Here, Plaintiff claims that the scheduling of services deprives him of access to recreation, sunlight, and meals.  None of these claimed deprivations is likely to rise to the level of a constitutional violation.

First, a denial of recreation can be a serious deprivation, *see Peterkin v. Jeffes*, 855 F.2d 1021, 1031-32 (3d Cir. 1988), but attending services causes Plaintiff to miss only one yard movement every other week, leaving him with two to three recreation periods per week.  Courts have upheld prison regulations under which prisoners fared the same or worse than Plaintiff.  *See, e.g., Gattis v. Phelps*, 344 F. App'x 801, 805 (3d Cir. 2009) (exercise limited to three days per week and not guaranteed to be outdoors); *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992) (exercise limited to forty-five minutes per week); *Knight v. Armontrout*, 878 F.2d 1093, 1096 (8th Cir. 1989) (prisoner deprived of exercise for thirteen days).  Second, Plaintiff's access to sunlight does not appear inconsistent with basic human needs.  Plaintiff can still take in

sunlight during his 2-3 yard movements each week.[3] Odinist services also take place in the yard, so Plaintiff is not entirely without access to sunlight on those days.[4] (Opp'n Br., Keil Decl. ¶ 3.) Finally, although it is undisputed that prisoners must receive a nutritionally adequate diet, *Laufgas v. Speziale*, 263 F. App'x 192, 198 (3d Cir. 2008), missing one meal per week, in itself, does not make a diet inadequate. Plaintiff does not dispute that he still has access to breakfast and dinner meals, and Defendants suggest that Plaintiff has access to snacks at the prison commissary as well. (Opp'n Br. 8-9.)

    (iii)    Equal Protection

Plaintiff also states that "the Muslim Chaplain in charge of scheduling services does so in a way that allows for people of his faith to not miss meals." (Reply Br. 1.) The Court reads this as a claim of discrimination with regard to a fundamental right in violation of the Equal Protection Clause. In order to succeed on an equal protection claim, Plaintiff must demonstrate that he "received different treatment from that received by other individuals similarly situated." *Chambers ex rel. Chambers v. School Dist. of Philadelphia Bd. of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009) (internal quotations omitted). Merely alleging unequal treatment is not enough. To succeed, Plaintiff will need to provide facts supporting this claim. *Id.* Not only does Plaintiff fail to allege supporting facts, but his allegation is rebutted by the Chaplaincy Department Schedule (Def.'s Supplemental Br., Suluki Decl. Ex. A.), which shows that Islamic classes and services were frequently held during the same conflicting 12:30 p.m. to 1:30 p.m. time slot as Odinist services. (*see id.* ¶ 9, 11, 12, 14, 16.) Without any competent evidence supporting Plaintiff's claim at this stage, we cannot say he is likely to succeed on the merits.

---

[3] Plaintiff asserts that these occasions are still insufficient because weather forces the recreation period to be held indoors most of the year. (Reply Br. 6.) No doubt the New Jersey climate leaves many desiring sunlight, but Plaintiff's weather-related complaints must be rejected as beyond Defendant's control.

[4] Plaintiff points out that he cannot remove his shirt during services. (Reply Br. 8.) Even accepting Plaintiff's position, he can still get sunlight on his face and hands during the service; he is not totally deprived on these days.

B. <u>Balance of Harms</u>

A party seeking a preliminary injunction must show irreparable injury. Generally, the violation of a constitutional right itself constitutes irreparable injury. *See Elrod v. Burns*, 427 U.S. 347, 373-74 (1976). As discussed above, however, Plaintiff is unlikely to successfully prove any of the claimed constitutional violations. Therefore, we find that this factor does not favor granting the requested relief.

On the other hand, granting a preliminary injunction may cause significant harm to the operation of NJSP. The scheduling process is a "formidable task," s*ee O'Lone*, 482 U.S. at 353, that courts will not upset without good reason. Under the PLRA, courts must give "substantial weight to any adverse impact" on the functioning of the criminal justice system that would result from an injunction. 18 U.S.C. § 3626(a)(2). Here, NJSP currently schedules religious services for 46 different faiths. (Def's. Supplemental Br., Suluki Decl. ¶ 3.) The scheduling is based on a number of factors including the need to accommodate numerous faiths in a safe and secure manner. (*Id.* ¶ 20.) In the absence of any evidence that services could be rescheduled to accommodate Plaintiff without any adverse impact on prison administration, the extraordinary judicial remedy of a preliminary injunction is not warranted.

## CONCLUSION

For the reasons given above, and for good cause shown,

It is on this 29th day of October, 2010,

ORDERED that Plaintiff's Motion for a Preliminary Injunction [103] is DENIED.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.